UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>BARRY TODD BAILEY and<br>ANNE MARGARET BAILEY,<br><br>        Debtors.<br><br>BRIAN D. BURKS, EMERALD ASSET<br>MANAGEMENT nka BURKS<br>WEALTH MANAGEMENT, INC.,<br><br>        Plaintiffs-Appellee,<br><br>    v.<br><br>BARRY TODD BAILEY,<br><br>        Defendant-Appellant. | Case No. 1:13-cv-00467-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

    Debtor Barry Todd Bailey appeals from the bankruptcy court's judgment against him. For the reasons explained below, the Court will affirm in part, and reverse and remand in part.

**BACKGROUND**

In December 2004, Brian Burks and Todd Bailey formed Emerald Asset Management, Inc., which is a financial-planning and investment firm. The company operated without incident for around five years. In the summer of 2010, however, Bailey told Burks he was insolvent and could no longer afford the necessary business licenses. He asked Burks to buy him out. Burks agreed, and the parties settled on a purchase price of $110,000 for Bailey's shares in the company, plus an additional $2,500 for a non-competition covenant.

Among other things, the non-competition covenant prohibited Bailey from (1) soliciting clients for investment advice, life insurance, or any other financial planning services, (2) disrupting the relationship between Emerald Asset Management and its clients, and (3) providing information about the company's clients to any third party for any purpose. At trial, Burks testified that he never would have bought Bailey's shares without the non-competition covenant because Emerald Asset Management's only assets were its clients. Instead, Burks would have started a new company and competed with Bailey for clients. Bailey, who is a lawyer, acknowledged the importance of the non-competition covenant, telling Burks he would risk losing his license to practice law if he violated it.

All the while, however, Bailey had no intention of honoring the covenant. Even as he was negotiating the stock purchase agreement, Bailey was in the process of joining

Concierge,[1] another financial-planning and investment firm, as an investment advisor representative. Bailey also solicited numerous clients of Emerald Asset Management, several of whom left the company and went to Concierge. *See Aug. 23, 2013 Bankr. Ct. Decision,* Dkt. 12-30, at 11 (witness testified that the following EAM clients went to Concierge: Jack Huff; Ken and Jackie Hutchison; Darius and Donna Bailey; Margaret Schuler; and Anne Graham King).

In April 2011, Burks and Emerald Asset Management sued Bailey in Idaho state court, asserting claims for (1) breach of contract; (2) breach of the covenant not to compete; (3) interference with contract; (4) interference with prospective economic advantage; (5) defamation; (6) slander; and (7) civil conspiracy. In January 2012, the state court granted partial summary judgment in Burks' favor, finding that Bailey had breached the covenant not to compete and was liable for damages resulting from that breach. Later, the state court allowed Burks to amend his complaint to seek punitive damages.[2]

After this state court made this ruling, but before damages were determined, Bailey filed a Chapter 7 bankruptcy petition. Burks and Emerald Asset Management filed an adversary proceeding in bankruptcy court, seeking to hold debts owed by Bailey nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6).

---

[1] The bankruptcy court found that three separate Concierge entities operated jointly – (1) Concierge Legacy Advisors; (2) Concierge Risk Alternatives; and (3) Concierge Private Wealth Management. For ease of reference, the Court will jointly refer these entities "Concierge."

[2] Under Idaho Code § 6-1604(2), plaintiffs cannot file a complaint seeking punitive damages, but must instead later move to amend the complaint to include punitive damages.

In May 2013, the bankruptcy court tried issues that had not been resolved in the state court lawsuit. Burks and Emerald Asset Management prevailed, and the bankruptcy court awarded compensatory damages of $135,217.65. *See Id.* at 42. The bankruptcy court concluded that this entire debt was nondischargeable, and it also awarded $135,217.65 in punitive damages, for a total, nondischargeable judgment of $270,435.30.

## STANDARD OF REVIEW

District courts review bankruptcy court decisions in the same manner as would the Ninth Circuit. *See In re George*, 177 F.3d 885, 887 (9th Cir. 1999). The Court therefore reviews the bankruptcy court's factual findings for clear errors and its conclusions of law de novo. *See, e.g., Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir. 1993). The issue of dischargeability of a debt is a mixed question of fact and law, which the Court reviews de novo. *See Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004). An award of punitive damages is reviewed for an abuse of discretion; the sufficiency of the evidence to support such an award is reviewed for substantial evidence. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906-07 (9th Cir. 2002); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1111 (9th Cir. 2001).

## ANALYSIS

Bailey contends that the bankruptcy court committed eight separate errors[3] in rendering judgment against him. *See Opening Br.*, Dkt. 11, at 6-7. These errors generally fall into three categories. First, Bailey contends Burks should not have been

---

[3] Appellant initially identified ten errors, but within the same brief, withdrew one of those issues and conceded that another was duplicative. *See Opening Br.*, Dkt. 11, at 30.

able to sue him for breaches of the stock purchase agreement because Burks himself breached the agreement. Second, Bailey contends the bankruptcy court erred in determining compensatory damages under Idaho state law. Third, Bailey contends the bankruptcy court erred in awarding punitive damages to Burks. The Court will address each argument in turn.

**1.      Burks' Obligations Under the Stock Purchase Agreement**

Bailey's threshold argument is that Burks could not properly sue on the stock purchase agreement because Burks himself breached the agreement by failing to pay the entire purchase price to Bailey. This argument stems from the fact that Burks agreed to pay Bailey in two installments. He paid $87,500 of the $112,500 purchase price in September 2010, when the parties executed the contract. The final $25,000 was due one year later, in September 2011. Before the final $25,000 payment was due, however, Bailey materially breached the contract by violating the covenant not to compete. Burks sued Bailey in March 2011. Bailey contends that Burks had to make the $25,000 payment before suing.

Bailey's argument ignores fundamental principles of contract law. If one party materially breaches an agreement, the other party is excused from further performance. *See generally Young Elec. Sign Co. v. Capps*, 492 P.2d 57, 62 (Idaho 1971). Further, the non-breaching party may immediately sue – without waiting until his excused performance would otherwise have been due. *See id*.

Bailey invokes a single case in an effort to overcome these rules: *Fajen v. Powlus,*

561 P.2d 388 (Idaho 1977). *Fajen* is factually distinguishable, however, and it does not upset the fundamental rules discussed above.

In *Fajen*, the plaintiff's predecessor sold land to the defendants in an installment contract. After the defendants had paid several thousand dollars toward the $22,000 purchase price, the plaintiff attempted to force a forfeiture, claiming that defendants breached the contract by failing to pay rents in addition to their regular monthly payment. Plaintiff had never complained about the failure to pay rents. Additionally, the plaintiff had previously defaulted on the contract by failing to deliver a title insurance policy.

On these facts, the court held that plaintiff could not force a forfeiture: He had waived the right to complain about the rental payments, and he had breached his obligation to provide the title insurance policy. In reaching its holding, the court relied on the principle that forfeitures are generally disfavored and, further, that "[o]ne may not declare a forfeiture while he himself is in default.'" *Id.* at 248 (citation omitted).

These facts are not even remotely aligned with the facts here. Most significantly, the agreement is not a land sale contract; neither party is seeking a forfeiture; and Burks' performance was excused. *Fajen* is thus inapt.

**2.      Compensatory Damages**

Bailey next argues that the bankruptcy court wrongly determined compensatory damages. The bankruptcy court awarded nearly $135,000 in compensatory damages. Of this amount, roughly $100,000 was awarded as damages for Bailey's false representation during contract negotiations that he intended to abide by the covenant not to compete.

*See Aug. 23, 2013 Decision,* Dkt. 12-30, at 22. The damage award of $100,000 represented the expenses Burks incurred in purchasing Bailey's shares. *See Aug. 23, 2013 Bankr. Ct. Dec.*, Dkt. 12-30, at 21 (the $100,280 damages award includes (1) the $85,000 down payment; (2) the $12,780 in interest paid on a loan to make the down payment; and (3) the $2,500 paid for the non-competition covenant). The remaining, approximate $35,000 award was based on damages Burks suffered due to Bailey's breach of the non-competition covenant. *See id.* at 42.

The court determined that both of these debts were nondischargeable. The $100,000 debt was found to be nondischargeable under 11 U.S.C. § 523(a)(2)(A), which holds nondischargeable debts obtained by "false pretenses, a false representation, or actual fraud . . . ." The $35,000 debt was found to be nondischargeable under 11 U.S.C. § 523(a)(6), which holds nondischargeable debts that are obtained by "willful and malicious injury by the debtor to another entity . . . ." The bankruptcy court concluded that Bailey's breach of the non-competition covenant was willful and malicious tortious conduct. *See Aug. 23, 2013 Bankr. Ct. Decision*, Dkt. 12-30, at 24-31.

In any nondischargeability action, there are two separate and distinct causes of action: "one is on the debt, as determined by state law, and the other is on the dischargeability of that debt, as determined by federal law." *In re Roussos*, 251 B.R. 86, 93 (9th Cir. BAP 2000) (*citing In re McKendry*, 40 F.3d 331, 337 (10th Cir. 1994)).

Bailey's appeal focuses primarily on the bankruptcy court's alleged errors in the first step – determining the debt under state law. In this regard, Bailey's central

contention is that the two damage awards described above (the $35,000 award and the $100,000 award) are inconsistent because the judgment simultaneously affirms and rescinds the stock purchase agreement. That is, Bailey argues that Burks was able to effect a one-sided rescission of the contract because he was refunded the entire purchase price (offset by the $25,000 he had not yet paid). Yet the judgment also affirms the stock purchase agreement by awarding Burks $35,000 in damages based on Bailey's breaches of the non-competition covenant.

To be sure, Bailey does not clearly make these points. His appellate briefs wander hither and yon, and the Court will not address every single point raised.[4] Still, though, Bailey does manage to make the basic point relating to Burks' need to elect a remedy.

As a general rule, a party that has been fraudulently induced to enter into a contract has a choice of remedies. He may "'either rescind the contract and demand back what has been received under it, or he may affirm the bargain and sue and recover damages for the fraud.'" *Breshears v. Callender*, 131 P. 15 (Idaho 1913)[5] (approvingly quoting *Scott v. Walton,* 52 P. 180 (Or. 1898)). Although the defrauded party can plead alternative theories of recovery, ultimately he cannot obtain a judgment that simultaneously affirms and rescinds the contract. *See id.; cf. Harris v. Bank of Commerce*, 298 P.3d 1060, 1063 (Idaho 2013) (in a real estate contract, "[t]he vendor

---

[4] Nevertheless, the Court has considered all of Bailey's arguments in rendering this decision.

[5] *Breshears* is an old case, but the basic principle regarding a defrauded party's election of remedies remains sound. *See generally* 17B C.J.S. *Contracts* § 828; 37 Am. Jur. 2d *Fraud and Deceit* § 349 (2d ed.); 27 *Willison on Contracts* § 69:56 (4th ed.) ("The defrauded party has the alternative but inconsistent rights and remedies of affirmance of the transaction and recovery of damages for the deceit, or of disaffirmance and restitution where restitution is available.")

cannot obtain judgments that both affirm the sale of the real property and rescind the sale.").

The judgment against Bailey runs afoul of this rule. For the reasons already discussed, although the bankruptcy court did not explicitly mention rescission in its decision, the court's judgment effectively allowed Burks to both rescind and affirm the stock purchase agreement. In short, Burks cannot receive damages which places him in the same position as if he had not entered into the contract *and* also recover damages for breach of the contract. The Court will therefore vacate the judgment in Burks' favor and remand the case to the bankruptcy court for further proceedings.

On remand, Burks will need to elect between a recovery based on fraud and a recovery based upon breach of the non-competition agreement. At first blush, this would seem to be an obvious choice, given the bankruptcy court's award of $100,280 for the former and $35,000 for the latter. However, that choice may not be so cut and dried. On appeal, Bailey has argued that a proper damages award for breach of a non-competition covenant includes two components: (1) lost profits, and (2) an amount for impairment of goodwill. *See Opening Br.,* Dkt. 11, at 27 ("The measure of damage for the breach of an anti-competition clause is the amount that the plaintiff lost by reason of the breach. The loss may include an amount for impairment of goodwill, as well as loss of profits.") (citing *Vancil v. Anderson*, 227 P.2d 74 (Idaho 1951)). Thus far, the bankruptcy court determined the amount of lost profits (and the Court finds no error in this determination), but has not separately determined the value of Emerald Asset Management's goodwill. It

may be that the combination of lost profits and impairment of goodwill total more than the bankruptcy court's award of fraud damages. This Court, however, expresses no opinion on the value of goodwill.

Finally, the Court will clarify that it finds no error in the bankruptcy court's conclusion that (1) the debtor's conduct was fraudulent under 11 U.S.C. § 523(a)(2)(A), and (2) the debtor's conduct was "willful and malicious" under 11 U.S.C. § 523(a)(6). Rather, the error occurred at the first step – in determining the debt under state law.

For all these reasons, the Court will vacate the compensatory-damages portion of the bankruptcy court's judgment and remand for further proceedings consistent with this decision.

**3.     Punitive Damages**

The Court will also vacate the award of punitive damages, but only so that the bankruptcy court can re-determine punitive damages relative to the compensatory damages award, that is now yet to be determined. Otherwise, the Court is not persuaded by Bailey's argument the bankruptcy court incorrectly decided to award punitive damages.

In attacking the punitive damages award, Bailey says the bankruptcy court failed to apply the correct evidentiary standard. To properly award punitive damages, the bankruptcy court was required to find, by clear and convincing evidence, that Bailey engaged in oppressive, fraudulent, malicious, or outrageous conduct. *See* Idaho Code § 6-1604(1). Bailey argues that the bankruptcy court did not apply the clear-and-

convincing-evidence standard, as opposed to a preponderance-of-the-evidence standard. He asks the Court to remand this issue to the bankruptcy court for further determination. The Court is not persuaded.

The bankruptcy court began its discussion of punitive damages by observing the requirement that "'the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct . . . ." *Aug. 23, 2013 Decision,* Dkt. 12-30, at 46. The court then explained that Bailey's conduct was, in many ways, even more severe than was the defendant's conduct in *Davis v. Gage,* 682 P.2d 1282 (Idaho 1984). In *Davis,* the court concluded that the defendant's violation of a covenant not to compete was "willful, wanton, malicious and the proper subject of punitive damages." *Id.* at 1286. The bankruptcy court explained:

> Like *Davis,* this case involves a clear violation of the intent expressed by the Covenant. In many ways, Bailey's breach was even more severe than in *Davis*. Bailey, an attorney, knowingly negotiated the covenant without the intention to abide by it. And Bailey repeatedly violated the Covenant with numerous EAM clients over a span of time – with some conduct occurring after the State Court Case commenced, after the State Court determined he breached the Covenant, and even after this bankruptcy court commenced. And like in *Davis*, Bailey's breach was accompanied by circumstances that establish his "willful, wanton, malicious" behavior.

*Aug. 23, 2013 Decision,* Dkt. 12-30, at 47-48.

Given the bankruptcy court's thorough treatment of the issue, and its obvious application of the correct evidentiary standard, the Court finds no error and no need for a remand for the purpose of applying the correct evidentiary standard.

convincing-evidence standard, as opposed to a preponderance-of-the-evidence standard. He asks the Court to remand this issue to the bankruptcy court for further determination. The Court is not persuaded.

The bankruptcy court began its discussion of punitive damages by observing the requirement that "'the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct . . . ." *Aug. 23, 2013 Decision,* Dkt. 12-30, at 46. The court then explained that Bailey's conduct was, in many ways, even more severe than was the defendant's conduct in *Davis v. Gage,* 682 P.2d 1282 (Idaho 1984). In *Davis,* the court concluded that the defendant's violation of a covenant not to compete was "willful, wanton, malicious and the proper subject of punitive damages." *Id.* at 1286. The bankruptcy court explained:

> Like *Davis,* this case involves a clear violation of the intent expressed by the Covenant. In many ways, Bailey's breach was even more severe than in *Davis*. Bailey, an attorney, knowingly negotiated the covenant without the intention to abide by it. And Bailey repeatedly violated the Covenant with numerous EAM clients over a span of time – with some conduct occurring after the State Court Case commenced, after the State Court determined he breached the Covenant, and even after this bankruptcy court commenced. And like in *Davis*, Bailey's breach was accompanied by circumstances that establish his "willful, wanton, malicious" behavior.

*Aug. 23, 2013 Decision,* Dkt. 12-30, at 47-48.

Given the bankruptcy court's thorough treatment of the issue, and its obvious application of the correct evidentiary standard, the Court finds no error and no need for a remand for the purpose of applying the correct evidentiary standard.

Similarly, the Court is not persuaded that the bankruptcy court's punitive damages award was too high. Although the Court will remand the punitive damages question so that the bankruptcy court can decide punitive damages after determining the new compensatory damages award, the Court believes that the punitive damages award issued here would be sustainable – even if the bankruptcy court had determined that compensatory damages were in the $35,000 range. Contrary to Bailey's suggestion otherwise, nothing in Idaho law requires that punitive damages be capped at a sum that would make plaintiff whole. Similarly, there is nothing in Idaho law that requires the defendant to have financially benefitted to any particular degree before imposing punitive damages. *See Village of Peck v. Denison*, 450 P.2d 310, 314 (Idaho 1969) ("The absence of a showing of actual damages need not bar an award of punitive damages, for such a showing is not a talismanic necessity.").

The Court has also considered and finds unpersuasive Bailey's various other arguments as to why punitive damages were inappropriately awarded. The record easily supports the bankruptcy court's decision on punitive damages – both in terms of the conduct and circumstances required to support such an award, as well as the amount awarded. Nevertheless, because the Court has reversed the compensatory damages award, it will vacate the punitive damages award as well, to give the bankruptcy court an opportunity to determine punitive damages relative to the new compensatory damages award. *See generally BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580-81 (1996) (in

determining reasonableness of punitive damages, courts consider the ratio of punitive damages to compensatory damages, among other factors).

## CONCLUSION

The bankruptcy court's decision is **AFFIRMED in part** and **REVERSED in part**. The bankruptcy court's judgment in Burks' favor is **VACATED** and the case is **REMANDED** for further proceedings consistent with this decision.

DATED: September 30, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court